**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------------------------x | | **FOR PUBLICATION** |
| In re: | : | |
| | : | |
| PARK AVENUE RADIOLOGISTS, P.C., *et al* | : | Chapter 11 |
| | : | Case No. 09-14929 (MG) through |
| | : | 09-14931 (MG) |
| Reorganized Debtors. | : | |
| ----------------------------------------------------------------x | | |
| PARK AVENUE RADIOLOGISTS, P.C. | : | Case No. 09-14929 |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Proc. No. 10-05463 (MG) |
| v. | : | |
| | : | |
| JOHN MELNICK, M.D., | : | |
| Defendant. | : | |
| ----------------------------------------------------------------x | | |

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION TO DISMISS**

*A P P E A R A N C E S:*

ARENT FOX LLP
*Attorneys for Plaintiff Park Avenue Radiologists, P.C.*
1675 Broadway
New York, NY 10019
　By:　Mark A. Angelov, Esq. (argued)
　　　　David N. Wynn, Esq.


ACKERMAN, LEVINE, CULLEN, BRICKMAN & LIMMER, LLP
*Attorneys for Defendant John Melnick, M.D.*
1010 Northern Boulevard, Suite 400
Great Neck, NY 11021
　By:　John M. Brickman, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

On December 21, 2010, Park Avenue Radiologists, P.C. (the "Reorganized Debtor" or "Park") filed an adversary proceeding against a former employee, defendant John Melnick, M.D. ("Melnick" or "Defendant") (the "Complaint"). (ECF Doc. # 1.) Park is a private radiology medical practice located at 525 Park Avenue, New York, New York. Park and two affiliates[1] (the "Debtors") filed chapter 11 bankruptcy petitions on August 11, 2009 (the "Petition Date"). The Debtors' reorganization plans were confirmed on August 26, 2010 and became effective on November 15, 2010. (Case No. 09-14929, ECF Doc. # 191.)

Park employed Melnick under a multi-year employment contract with a restrictive covenant prohibiting post-termination employment within a specifically designated area of an approximately 1 ¼ mile radius of Park. The Complaint alleges that Melnick resigned from Park's practice on March 12, 2010[2] and began working for a competing radiology practice in violation of the restrictive covenant. Melnick moves to dismiss the Complaint, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, on the ground that the Court lacks subject matter jurisdiction over the proceeding (the "Motion to Dismiss"). For the reasons discussed below, the Motion to Dismiss for lack of subject matter jurisdiction is granted.

---

[1] Imaging Services Company of New York, LLC, Case No. 09-14930, and MLLH Realty Corp., Case No. 09-14931, were both filed on the same day as Park and were jointly administered pursuant to an order entered on September 30, 2009. (Case No. 09-14929, ECF Doc. # 24.) Unless otherwise indicated, ECF citations throughout this Opinion refer to the docket in the Adversary Proceeding, Adv. Pro. No. 10-05463.

[2] The Complaint alleges that the Defendant tendered his letter of resignation on March 12, 2010, but continued working for Park and collecting a paycheck from Park through April 2, 2010. (Compl. ¶¶ 75, 78.)

2

## I. BACKGROUND

### A. Park's Bankruptcy and Plan of Reorganization

Park is a private radiology medical practice operating as a professional corporation at 525 Park Avenue, New York, New York. (Compl. ¶ 8.) Park's owners as of the Petition Date were Dr. Albert Messina ("Messina" or "Dr. Messina") and Dr. Marc Liebeskind ("Liebeskind" or "Dr. Liebeskind").[3] The Debtors' "financial difficulties were caused by, amongst other things, an arbitration award that the Debtor could not pay and the loss of business caused by a shareholder's alleged breach of his fiduciary duty in diverting substantial business from the debtor[s]." (Case No. 09-14929, ECF Doc. # 19.) Essentially, a series of shareholder disputes drove the Debtors into bankruptcy. During the course of the bankruptcy, Dr. Messina and Dr. Liebeskind signed a settlement, awarding Dr. Messina money damages and leaving Dr. Liebeskind with control of Park. (Case No. 09-14929, ECF Doc. # 111.) Dr. Liebeskind officially gained operational control over Park on March 12, 2010. (Compl. ¶ 24.)

Park's Plan of Reorganization (the "Plan") provided for distributions to unsecured creditors, and allowed Dr. Marc Liebeskind to retain a 100% equity interest in Park in exchange for guaranteeing obligations under the Plan and waiving distributions owed him. (Case No. 09-19429, ECF Doc. # 148.) The Plan included a Retention of Jurisdiction provision including, but not limited to, jurisdiction "to decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date." (*Id.* § 11.1(f).)[4]

---

[3]   Park's disclosure statement contains a comprehensive discussion of Park's ownership composition starting from the company's founding through the Petition Date. (Case No. 09-19429, ECF Doc. # 147.)

[4]   The Plan also included a Post-Closing Jurisdiction provision. (Plan § 11.2.) While this section of the Plan was referenced by Plaintiff's counsel during the hearing on May 18, 2011 (the "Hearing"), it is inapplicable to this case because the Plaintiff's bankruptcy case has not yet been closed.

3

**B.     The Employment Agreement and Restrictive Covenant**

On or about March 12, 2004, Melnick entered into a written employment contract with Park, as amended on or about June 20, 2006 (the "Employment Agreement"). (Compl. ¶ 10.) The Employment Agreement contemplated an initial term of five (5) years, beginning on July 7, 2004. (*Id.* ¶ 12.) During the initial five (5) year period, the Employment Agreement provided that either party could terminate the agreement on fifty (50) days written notice, with Park able to terminate Melnick's employment for "cause." (*Id.* ¶ 13.) After the five (5) year term, "for cause" was narrowed to include only "gross negligence and unlawful and unethical behavior." (*Id.*) The Employment Agreement also contained the following restrictive covenant:

> In the event that either party terminates this agreement after the second year of employment, it is agreed that you (Melnick) will not work north of 36th Street, south of 85th Street, east of Broadway below 59th Street, nor east of CPW above 59th Street with the exception of positions at any teaching hospital within this area or obtaining and/or maintaining privileges at any hospital within said restricted area and performing all duties related thereto. This restrictive covenant shall not apply if the Practice terminates your employment without cause or if you (Melnick) terminate your employment for cause. Further, you agree to keep confidential any non-public information about the Practice and its operations that you may acquire during your employment.

(the "Restrictive Covenant") (Compl. Ex. 1). After executing the Employment Agreement, the parties entered into an addendum to the Employment Agreement, limiting the Restrictive Covenant to a term of two (2) years. (Compl. ¶ 15.) After the five (5) year term initially contemplated by the Employment Agreement, Melnick and Park continued their employment relationship such that Melnick continued to work for Park under the Employment Agreement. (*Id.* ¶ 16.)

During Melnick's time as an employee at Park, a shareholder dispute arose between Liebeskind and Messina, the two shareholders of Park and its affiliates. The dispute pushed the

4

practice and its affiliates into bankruptcy on August 11, 2009. During the course of the bankruptcy, Liebeskind and Messina settled their dispute by agreement executed on March 12, 2010 and approved by the Court on April 20, 2010 (the "March 12 Settlement"). (*Id.* ¶ 23.) Under the March 12 Settlement, Messina agreed, among other things, to resign from the practice and let his interests in Park and affiliated entities be redeemed in exchange for certain payment in 2010 and additional payments over time. (*Id.* ¶ 24.)

The Complaint alleges Melnick learned in the days leading up to the March 12 Settlement that Messina was planning to leave Park and that Melnick was not interested in staying at Park without Dr. Messina. (*Id.* ¶¶ 28–29.) The Complaint also alleges that Melnick told Messina he could not work with Liebeskind and asked Messina to release him from the Restrictive Covenant. (*Id.* ¶¶ 31–32.) On February 25, 2010, Melnick provided Messina a document to sign entitled "Addendum to Employment Agreement" purporting to release Melnick from the Restrictive Covenant in his Employment Agreement with Park. (*Id.* ¶ 33.) Messina executed the Addendum Agreement on February 25, 2010, less than a month before his departure from the practice, in exchange for no consideration. (*Id.* ¶¶ 36–38.) The Addendum was not presented to Park's counsel for review and consideration, nor was the Addendum Agreement disclosed to anyone other than Messina and Melnick. (*Id.* ¶¶ 40–41.) Furthermore, the Addendum Agreement was never submitted for approval by the Bankruptcy Court. (*Id.*) Park contends the Restrictive Covenant was valuable property of the estate that could not be released by Messina (through the Addendum Agreement) during the bankruptcy case without Court approval.

      **C.**      **Melnick's Alleged Violation of the Restrictive Covenant**

The Complaint alleges that prior to March 12, 2010, Melnick began employment negotiations with Lenox Hill Radiology and Medical Imaging Associates, P.C. ("LHR"). (*Id.* ¶

5

43.) In submitting his written resignation, Melnick asked Messina to countersign his resignation letter. (*Id.* ¶ 69.) The resignation letter was not placed in Park's files and neither Messina nor Melnick disclosed to Dr. Liebeskind that Melnick had resigned. (*Id.* ¶ 71.) The Complaint alleges Melnick did not disclose to anyone at Park's office that he had resigned as of March 12, 2010. (*Id.* ¶ 72.) Furthermore, by March 15, 2010, the next business day after the resignation, LHR's counsel had in its possession a draft employment contract for Melnick confirming his employment with LHR. (*Id.* ¶ 76.) After March 12, 2010, Melnick continued to show up at Park until April 2, 2010 and continued to accept a salary from Park until April 2, 2010. (*Id.* ¶¶ 77–78.) According to the Complaint, Melnick began working at LHR no later than April 5, 2010. (*Id.* ¶ 45.) Melnick's employment with LHR was at its 61 East 77th Street address, a prohibited address under the Restrictive Covenant. (*Id.* ¶ 49.)

### D. Other Allegations in the Complaint

In addition to a breach of the Restrictive Covenant, the Complaint asserts several other claims. Park alleges that Melnick owed fiduciary duties to Park and breached them by acting in "a malicious manner designed to injure Park and its affiliated entities." (*Id.* ¶ 54.) Specifically, the Complaint alleges that "as an employee of Park, Melnick had access to Park's confidential information, including information pertaining to the network of Park's referral physicians and knew that Park received significant revenues by performing medical services to a particular labor union, which services often yielded monthly receipts in excess of $200,000." (*Id.* ¶ 58.) The Complaint accuses Melnick of acting in concert with others to destroy and/or steal Park's referral network. (*Id.* ¶ 57.) Park claims that Melnick (and others not yet known) communicated to "Park's referral network false statements [Park could not reorganize and would not be in

6

business much longer] about Park and its owner that were intended to disparage Park and cause the union and other physician referrals to stop sending patients to Park." (*Id.* ¶ 97.)

Melnick is also accused of sabotaging Park by engaging in a "work slowdown" and soliciting on behalf of LHR more than six (6) Park employees, who resigned and followed Melnick to LHR. (*Id.* ¶¶ 81–82.) "As to the work slowdown, Melnick created an unprofessional backlog of unread cases to the detriment of Park . . . . Melnick failed to review and report patient cases at a normal and customary rate . . . ." (*Id.* ¶¶ 83–84.) Park seeks damages against Melnick in an amount not less than $2 million, together with attorney's fees.

### E. Claims in the Complaint

The Complaint includes seven causes of action. The first, sixth and seventh claims contend that the Addendum Agreement, which by its terms revoked the Restrictive Covenant, is null and void and should be avoided pursuant to various provisions of chapter 5 of the Bankruptcy Code because Park received no consideration in exchange for the release. (*Id.* ¶¶ 106, 136, 143.) The second claim derives from the first and argues that because the Addendum Agreement is null and void, Melnick's employment at LHR violated the Restrictive Covenant, causing irreparable harm to Park. (*Id.* ¶ 111.) The third claim is for breach of the Employment Agreement, entitling Park to at least $2 million in damages, and the fourth claim alleges that Melnick breached his fiduciary duties to Park. (*Id.* ¶¶ 119, 124.) The fifth claim accuses Melnick of intentionally defaming Park and interfering with and destroying Park's relationship with the union and other physicians that sent patients to Park. (*Id.* ¶ 129.)

## II. DISCUSSION

Melnick moves to dismiss the Complaint on the ground that the Court lacks subject matter jurisdiction over the proceeding. Melnick argues that Park filed this Complaint after

7

Park's time to file adversary proceedings lapsed under the confirmed Plan. (ECF Doc. # 10.) The Reorganized Debtor's Plan was confirmed on August 26, 2010 and became effective on November 15, 2010. (Case No. 09-14929, ECF Doc. # 191.) Park filed its Complaint over a month later, on December 21, 2010.[5] Melnick argues that after confirmation of a chapter 11 plan, the jurisdiction of the bankruptcy court shrinks. To invoke post-confirmation bankruptcy court jurisdiction, the plaintiff must establish that the matter has a close nexus to the bankruptcy plan or proceeding *and* the plan must provide for the retention of jurisdiction over the dispute. Melnick contends that Park fails to satisfy both prongs, and that the Court therefore lacks subject matter jurisdiction over the dispute.

    **A.**    **Standard on a 12(b)(1) Motion to Dismiss**

Rule 12(b)(1) of the Federal Rules of Civil Procedure is made applicable to a bankruptcy proceeding by Bankruptcy Rule 7012(b). *See* FED. R. BANKR. P. 7012(b). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court must view the complaint liberally and accept as true all material facts alleged in the complaint when considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *In re Finnie*, No. 05-16373, 2007 WL 1574294, at *3 (Bankr. S.D.N.Y. May 29, 2007) (*citing 19 Court Street Assocs., LLC v. Resolution Trust Corp. (In re 19 Court Street Assocs., LLC)*, 190 B.R. 983, 995 (Bankr. S.D.N.Y. 1996); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l., Ltd.*, 775 F. Supp. 101, 103 (S.D.N.Y. 1991)). However, the court need not draw inferences favorable to the plaintiff from the complaint, as is the case with a Rule

---

[5] Park's counsel acknowledged during argument that Park was aware of the potential claims against Melnick before the Plan was confirmed.

12(b)(6) motion to dismiss. *J.S. v. Attica Cent. Schools*, 386 F.3d 107, 110 (2d Cir. 2004).[6] The court is allowed to consider extrinsic evidence and is not limited to the information contained in the pleadings. However, it may not rely on conclusory or hearsay evidence. *Kamen v. Am. Tel. & Tel.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen . . . subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise."); *Attica Cent. Schools*, 386 F.3d at 110. "The party seeking to invoke the court's jurisdiction has the burden of establishing that subject matter jurisdiction exists over its complaint." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). The Court finds that the conclusory allegations in the Complaint do not suffice to establish subject matter jurisdiction over this adversary proceeding.

B. **The Bankruptcy Court's Jurisdiction Contracts Post-Confirmation**

The jurisdiction of the bankruptcy court, like other federal courts, is limited. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). "Congress has prescribed the scope of bankruptcy jurisdiction over civil proceedings (as opposed to cases) in 28 U.S.C. § 1334(b), limiting it to proceedings that arise in a bankruptcy case or arise under the bankruptcy law (i.e., core proceedings) and proceedings that relate to a bankruptcy case (i.e., non-core proceedings)." *Rubin Baum Levin Constant & Friedman v. Mushkin (In re Masterwear Corp.)*, 241 B.R. 511, 515 (Bankr. S.D.N.Y. 1999). Section 1334 does not expressly limit the bankruptcy court's post-confirmation jurisdiction. However, most courts agree that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks." *General Media v. Guccione (In re General Media,*

---

[6] Park argues that the Court must draw all inferences from the Complaint in support of Plaintiff, citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008). *W.R. Huff* held that "[b]ecause standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." (Internal quotation marks and citations omitted.) But *W.R. Huff* involved a standing issue, not a motion to dismiss for lack of subject matter jurisdiction. The Court finds that *Attica Cent. Schools*, 386 F.3d at 110, is controlling; the Court need not draw all inferences favorable to the plaintiff from the complaint.

*Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005); *see also Cantor v. Am. Banknote Corp.*, No. 06 Civ. 1392(PAC), 2007 WL 3084966, at *3 (S.D.N.Y. Oct. 22, 2007) ("Generally a bankruptcy court's jurisdiction abates upon confirmation of the reorganization plan."); *Guccione v. Bell*, No. 06 Civ. 492(SHS), 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006) ("Courts generally agree that federal jurisdiction pursuant to section 1334 shrinks once plan confirmation has occurred.").

Pursuant to section 1141(b) of the Bankruptcy Code, "a chapter 11 plan or confirmation order may specifically provide for the retention of jurisdiction by the bankruptcy court over actions pending at the time of confirmation and actions commenced after the time of confirmation, and over any assets recovered as a result of these actions." *Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.)*, 111 B.R. 457, 462–64 (Bankr. S.D.N.Y. 1990). "Additionally, 11 U.S.C. § 1142 confers limited post-confirmation jurisdiction upon the bankruptcy court for the purpose of implementing the plan." *Id.* at 462 (*citing Goodman v. Phillip R. Curtis Enters., Inc.*, 809 F.2d 228, 232 (4th Cir. 1987)).

**C.      Requirements to Establish Post-Confirmation Subject Matter Jurisdiction**

Generally, an inquiry involving a bankruptcy court's subject matter jurisdiction commences with a discussion whether the matter before the court is "core" or "non-core." *See* 28 U.S.C. § 1334. The genesis of this determination is 28 U.S.C. § 1334, which provides that a bankruptcy court has jurisdiction over cases under title 11, proceedings *arising under* title 11, proceedings *arising in* a case under title ll, and proceedings *related to* a case under title 11. *Id.* (emphasis added). The distinction between what constitutes a core proceeding and a non-core proceeding matters because in non-core proceedings (those simply "related to" a case under title

10

11) the bankruptcy court can only submit proposed findings of fact and conclusions of law to the district court, which renders a final judgment. *See* 28 U.S.C. § 157(c)(1).

While it is still necessary for a bankruptcy court adjudicating a post-confirmation dispute to determine whether the matter before it is core or non-core, courts in such circumstances have required an additional showing that the dispute has a close nexus to the bankruptcy case or "relates back to the effectuation of the Chapter 11 proceeding." *Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir. 1997). "[T]he distinction between core and non-core jurisdiction may not be particularly relevant after confirmation." *General Media*, 225 B.R. at 74. "Although the cases generally focus on 'related to' post-confirmation jurisdiction, the scope of the post-confirmation jurisdiction mapped out by the case law usually meets the definition of a core proceeding. Broadly speaking, the proceeding must affect some aspect of the plan—its meaning, its implementation or its consummation—to come within the Court's post-confirmation jurisdiction." *Id.* As the court in *Neptune* succinctly stated, "[t]he fact that Neptune's adversary proceeding might be characterized as core does not mean that this court retains subject matter jurisdiction to hear it after confirmation . . . ." *Neptune World Wide Moving, Inc.*, 111 B.R. at 464. Once a plan is confirmed, it is assumed the reorganized debtor is becoming self-sufficient, and no longer needs umbrella protection from the bankruptcy court. *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991). Additionally, there is no estate, as property reverts to the reorganized debtor. 11 U.S.C. § 1141(b); *Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*, 272 B.R. 74, 97–98 (Bankr. S.D.N.Y. 2002). Consequently, the Reorganized Debtor's emphasis on whether this is a core or a non-core proceeding is misguided. As further explained below, satisfying the "close-nexus" test is necessary but not sufficient to establish post-confirmation jurisdiction.

11

Well-settled case law establishes that as a consequence of the bankruptcy court's post-confirmation jurisdictional shrinkage, a party seeking to establish post-confirmation jurisdiction must satisfy two requirements. *See General Media*, 335 B.R. at 73–74 (collecting cases). "First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan or incorporated litigation trust agreement. Second, the plan must provide for the retention of jurisdiction over the dispute." *Id.* The *General Media* test is consistent with other Second Circuit case law holding that a bankruptcy court retains post-confirmation subject matter jurisdiction to interpret its own orders, "particularly when disputes arise over a bankruptcy plan of reorganization." *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002) (*citing Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997); *In re Johns-Manville Corp.*, 97 B.R. 174, 179–80 (Bankr. S.D.N.Y. 1989)).

Park's adversary proceeding against Melnick fails to satisfy either one of these two requirements: the claims in the Complaint do not have a close nexus to the confirmed plan; and the Reorganized Debtor's confirmed Plan does not provide for the retention of jurisdiction over the dispute. "[N]one of the claims arise under the Plan or require the Court to interpret it. In addition, the property of the various estates vested in the respective reorganized debtors on the Effective Date, and the estate ceased to exist. Thus, any recovery will inure solely to the benefit of the plaintiff." *General Media*, 335 B.R. at 74–75 (citation omitted).

### 1. Plaintiff Has Not Established that the Adversary Proceeding Bears a Sufficiently Close Nexus to the Plan of Reorganization

"Broadly speaking, the proceeding must affect some aspect of the plan—its meaning, its implementation or its consummation—to come within the Court's post-confirmation jurisdiction." *Id.* at 74. Park's Complaint includes state law claims for breach of contract,

12

breach of fiduciary duty and defamation. It also includes claims under sections 548 and 549 of the Bankruptcy Code. While the claims under section 548 and 549 "arise under" title 11, and are "core" claims, those claims are asserted to prop up the state law claims by attempting to invalidate Messina's release of Melnick from the Restrictive Covenant in the Employment Agreement. Simply put, if the release is effective, Park cannot assert a claim against Melnick for breach of the Restrictive Covenant. But none of these claims bears a close nexus to any provision in the confirmed Plan, or to the Plan's interpretation or implementation.

Case law supports granting a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction where the dispute lacks a sufficient nexus to the debtor's plan of reorganization. In *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir. 2004), one of the leading cases on the limits of post-confirmation jurisdiction, the court held that the bankruptcy court lacked subject matter jurisdiction. *Resorts* involved a post-confirmation malpractice adversary proceeding against an accounting firm retained to provide services to a litigation trust established pursuant to the debtor's confirmed chapter 11 plan. The court held there was an insufficient nexus since adjudication of the "malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; [and] it will not interfere with the implementation of the Reorganization Plan." *Id.* at 169.

*Cantor*, 2007 WL 3084966, at *1, involved a determination whether the court had post-confirmation jurisdiction to hear claims involving a breach of a contract that was incorporated by reference into the debtor's plan of reorganization. The reorganization plan and confirmation order authorized the debtor to enter into the agreement, but did not include the agreement itself. *Id.* The *Cantor* court held it lacked subject matter jurisdiction because there was an

13

insufficiently close nexus. *Id.* It reasoned that adjudication of the claim would not necessarily require interpretation of the plan. *Id.* at *4.

This case involves even less of a nexus than existed in *Cantor* or *Resorts*. In *Resorts* any recovery would have augmented the litigation trust, which, in turn, would have increased the distribution to creditors; any recovery in this case would inure solely to the benefit of the Reorganized Debtor. Furthermore, resolving the disputes in this case will not require the Court to consult the Plan or interpret any provisions contained therein.

The Reorganized Debtor asserts that "even under the 'close nexus' standard advanced by the Defendant, this Court has subject matter jurisdiction in this proceeding for the independent reason that the relief sought includes injunctive relief necessary to protect the Reorganized Debtor and its property." (ECF Doc. # 12 ¶ 2.) No authority is cited for the proposition that injunctive relief satisfies the "close nexus" test.[7]

Park argues that because "claims arising under Sections 548 and 549 are explicitly preserved in Section 7.8 of the Plan . . . this adversary proceeding is directly related to an explicit plan provision." (Compl. ¶¶ 28–29.) However, reference to a document or code section in a plan of reorganization is not enough to establish a sufficient nexus. A similar argument was raised and rejected in *Cantor*. The court there noted that "Defendant argues that the 2005 Agreement is encompassed within the Reorganization Plan and the Confirmation Order, and therefore interpreting its provisions and disputes over them is committed to the Bankruptcy Court. This position is untenable." 2007 WL 3084966 at *4. Bankruptcy court jurisdiction does

---

[7] The Reorganized Debtor cites to *Broadstripe, LLC v. Nat'l Cable Tel. Coop., Inc. (In re Broadstripe, LLC)*, 402 B.R. 646, 659 (Bankr. D. Del. 2009) for the proposition that injunctive relief is proper to prevent destruction of a business. *Id.* ("Based on the irreparable harm to the Debtors that could ensue in the absence of injunctive relief, [a]n injunction is proper to prevent the threatened extinction of a business.") (internal quotation marks and citation omitted). But the injunctive relief granted in *Broadstripe* related to a pre-confirmation request for injunctive relief, not post-confirmation jurisdiction. *Id.* (stating that "the public interest favors granting the requested injunctive relief to enable the Debtors to attempt to reorganize in chapter 11).

14

not exist to protect a debtor following reorganization. While rehabilitation is an important goal of bankruptcy, it does *not* "therefore follow[] that a core proceeding seeking injunctive relief to allow a reorganized debtor to remain viable, as is asserted in the Complaint, is certainly 'a close nexus to the bankruptcy plan or proceeding.'" (ECF Doc. # 12 ¶ 32) (*citing In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006)).

> Writing for the Second Circuit in 1944, Judge Clark admonished:
>
>> We have had occasion before to deplore the tendency of District Courts to keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction for a variety of purposes, extending from complete supervision of the new business to modifications of detail in the reorganization. Since the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and to-be-hoped-for more successful career, it should be the objective of courts to cast off as quickly as possible all leading strings which may limit and hamper its activities and throw doubt upon its responsibility.

*North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir. 1944)). The Court is not persuaded that "without this Court's enforcement of the restrictive covenant, the Plan will continue to be undermined and the Reorganized Debtor will be further irreparably injured by the Defendant." (Compl. ¶ 33.)

The Reorganized Debtor can, of course, bring the claims alleged in the Complaint in state court, including the claims under sections 548 and 549 of the Bankruptcy Code. Section 1334 grants district courts (and, by extension, bankruptcy courts) "original but not exclusive jurisdiction of all civil proceedings arising under title 11 . . . ." 28 U.S.C. § 1334. Other courts have held, and Defendant's counsel conceded at argument, that the section 548 and 549 claims can be asserted in state court. *See, e.g.*, *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 811 (N.D. Cal. 2006). In *Gray & Assocs., LLC v. Speltz & Weis LLC*, 2009 WL 41613822, at *16,

15

Misc.3d 1124(A) (N.Y. Sup. Ct. 2009), Justice Fried in the New York Supreme Court Commercial Division said:

> None of the case law cited by defendants support[ed] their argument that the Supreme Court of the State of New York either lacks subject matter jurisdiction or is pre-empted from exercising such jurisdiction over federal statutory conveyance claims, in a situation where a plan of reorganization has been approved and put into place, and, as part of that reorganization, the debtor has assigned the right to bring 'all claims, rights . . . and causes of action, including claims, rights, or causes of action arising out of or under chapter 5 of the Bankruptcy Code, that could have been brought or raised by or on behalf of the Debtors' against certain entities to a litigation trust benefitting the official creditors committee.

*Id.* While Park's Plan contains slightly different language, Justice Fried's conclusion is equally applicable given the circumstances surrounding the current action.

### 2. The Reorganized Debtor's Plan Did Not Retain Jurisdiction Over Adversary Proceedings Not Pending on the Effective Date

The Reorganized Debtor has not satisfied the second prong of the *General Media* test either. The Reorganized Debtor's Plan did not retain jurisdiction over adversary proceedings not *pending* on the plan's Effective Date, November 15, 2010. The adversary proceeding was filed on December 21, 2010.

Section 11.1[f] of the Plan provides that

> The Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to . . . [d]ecide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant any applications involving the Debtor that *may* be pending on the Effective Date.

(Case No. 09-14929, ECF Doc. # 162) (emphasis added). Park claims that section 7.8 of the Plan "preserves certain rights of action for the Reorganized Debtor to be brought *after* the effective date, including claims under Section 549 of the Code." (ECF Doc. # 12 ¶ 36.) Park argues that "since [its] claims under the Code can only be asserted before this Court, Section 7.8

16

would be meaningless unless this Court had post-effective date jurisdiction." (*Id.*) As demonstrated above, the premise for this statement is wrong—all of the claims in the Complaint can be asserted in state court. Additionally, section 7.8 purports to preserve for the Reorganized Debtors any claims, rights and causes of action that the Debtors would have been able to assert during the bankruptcy proceeding. Section 7.8 is not a jurisdictional grant and can be read harmoniously with section 11.1(f), rendering neither Plan provision surplusage. Section 7.8 is not rendered meaningless by the Court's holding that it lacks subject matter jurisdiction. Absent a sufficiently broad retention of jurisdiction Plan provision, the Court lacks subject matter jurisdiction over the Complaint.[8]

The claims alleged in the Complaint are not related to the implementation or consummation of Park's Plan. Therefore, because Park has failed to satisfy the two prong test for post-confirmation jurisdiction, the Court concludes that it lacks subject matter jurisdiction over the Complaint.

---

[8] In *Neptune World Wide Moving, Inc.*, the bankruptcy court concluded the requirement a plan include a retention of jurisdiction provision for post confirmation jurisdiction to exist is derived from section 1141(b): "The confirmation of a Chapter 11 plan does not totally divest a bankruptcy court of all jurisdiction in the case. Thus, 11 U.S.C. § 1141(b) permits a debtor to insert language in the plan and order confirming the plan which authorizes the bankruptcy court to retain a limited jurisdiction over specified property of the estate which did not vest in the newly confirmed debtor." 111 B.R. at 462. Of course, the close nexus test must still be satisfied. But *Neptune* also stated that "11 U.S.C. § 1142 confers limited post-confirmation jurisdiction upon the bankruptcy court for the purpose of implementing the plan." *Id.* at 462 (*citing Goodman v. Phillip R. Curtis Enters., Inc.*, 809 F.2d 228, 232 (4th Cir. 1987)). Section 1142, unlike section 1141, does not appear to require a separate retention of jurisdiction provision.

### III.    CONCLUSION

Based on the foregoing reasons, the Court grants the Defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated:  May 31, 2011
         New York, New York

                                                    /s/Martin Glenn
                                               MARTIN GLENN
                                        United States Bankruptcy Judge